IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RANDALL BINGHAM,** | : |
| | : |
| Plaintiff, | : |
| VS. | : |
| | : NO. 5:15-CV-19-MTT-MSH |
| **WARDEN CEDRIC TAYLOR** *et al.*, | : |
| | : |
| Defendants. | : |
| _____ | : |

**ORDER**

*Pro se* Plaintiff **RANDALL BINGHAM**, who is presently incarcerated at Baldwin State Prison in Hardwick, Georgia, has filed a complaint and amended complaint seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff also seeks to proceed without prepayment of the full filing fee. *See* 28 U.S.C. § 1915.

### I.   Motion to Proceed *in forma pauperis*

The Court has reviewed Plaintiff's motion to proceed *in forma pauperis* (ECF No. 3) and, based on his submissions, finds that Plaintiff is presently unable to pre-pay any portion of the filing fee. The Court thus **GRANTS** Plaintiff's motion and waives the initial partial payment required by 28 U.S.C. § 1915(b)(1).

Plaintiff is nevertheless obligated to pay the full filing fee, using the installment payment plan described in 28 U.S.C. § 1915(b). The prison account custodian shall cause to be remitted to the Clerk of this Court monthly payments of 20% of the preceding month's income credited to Plaintiff's account (to the extent the account balance exceeds

$10) until the $350.00 filing fee has been paid in full. The Clerk of Court is directed to send a copy of this Order to the business manager at Plaintiff's place of incarceration.

## II. Preliminary Screening

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," the Court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a). Having now done so, the Court finds that each of Plaintiff's claims fails to state a claim upon which relief may be granted and that Plaintiff's Complaint must be **DISMISSED** under 28 U.S.C. § 1915A.

### A. Standard of Review

When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks

omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

### B. Factual Allegations

This action arises out of Plaintiff's transfer to and confinement in Baldwin State Prison ("BSP"). According to the Complaint (ECF No. 1) and Amended Complaint (ECF No. 7), while confined in Valdosta State Prison ("VSP"), Plaintiff was denied access to the law library by Warden Marty Allen, who "got mad at [Plaintiff]" and gave a

3

lock to another inmate named Charles Jackson who used the lock to assault Plaintiff. When Plaintiff swore out an arrest warrant regarding this assault, Warden Allen placed Plaintiff in protective custody, ordered a prison transfer, and denied Plaintiff medical attention for the injuries he suffered as a result of the assault.[1] Plaintiff was classified as minimum security in VSP. (ECF No. 1 at 3.)

When Plaintiff arrived at BSP, Plaintiff alleges that Lillia Warren raised his security level to medium and denied Plaintiff protective custody to protect him from attacks by other inmates who were friends of inmate Jackson. (ECF No. 1 at 3.) Plaintiff further alleges that Wardens Taylor, Jordan, and Humphries and Unit Manager Smith likewise denied his requests for protective custody. (*Id.* at 4.) When Plaintiff refused his housing assignment because he feared being attacked, Plaintiff alleges Defendants punished him by placing him in segregation and denying him the use of a "property kart" to transfer his belongings to the segregation unit, which caused Plaintiff to injure his back. (ECF No. 1-1 at 1.) Plaintiff also contends he was denied access to the prison's grievance procedures, law library, and medical treatment and has been denied outgoing mail, phone, shower, food, and yard call privileges in retaliation for his actions, which included "placing [sic] Warden Allen on the witness stand in Lowndes County and for

---

[1] Plaintiff clarified in his Amended Complaint that he has brought a separate claim against VSP Warden Marty Allen and other VSP prison officials in the Valdosta Division of the Middle District of Georgia. (ECF No. 7 at 1.) Warden Allen is not listed in the caption of Plaintiff's original or amended complaints, and it appears that Plaintiff described Warden Allen's conduct only to explain why he was transferred from VSP to BSP. As such, the undersigned does not construe Plaintiff's Complaint or Amended Complaint in this case as raising any claims against Warden Allen or VSP prison officials.

4

prior civil rights litigation." (ECF No. 1-1 at 2.)  Plaintiff further alleges that he had to refuse an operation at Augusta Medical Prison because Charles Jackson was waiting at the prison to assault him.  After refusing the operation, Plaintiff was transferred back to BSP. (ECF No. 1 at 4.)

In his Amended Complaint, Plaintiff clarifies that he actually "volunteered himself to be placed into segregation" at BSP in order to protect himself from other inmates because "Warden Taylor says he does not offer any protective custody." (ECF No. 7 at 2.)  Plaintiff also states in his Amended Complaint that Defendants Taylor, Smith, and Jordan threatened to put someone in Plaintiff's segregation cell that would "make" him return to general population if he did not do so voluntarily. (*Id.*)  Plaintiff reiterates his claims that he has been denied access to the law library and states that he is being retaliated against by being "transferred from prison to prison to hamper [his] civil actions" and by being subjected to retaliatory "shake downs" and confiscation of his legal materials. (*Id.*)  Plaintiff also submits that Defendants Taylor and Smith confiscated his soft gym shoes, even though he had a "soft shoe medical profile," as retaliation for filing various civil actions. (*Id.* at 3.)  Finally, Plaintiff requests that a table and chair be placed in his segregation cell so that he may sit while performing legal work. (*Id.*)

### C. Plaintiff's Claims

Construing Plaintiff's Complaint liberally, as is required at this stage, the Court finds that Plaintiff, who appears to be seeking injunctive relief only at this time, has attempted to allege the following claims:

### a. Retaliation Claims

It is well established that discipline imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). Generally speaking, to prove a retaliation claim an inmate needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). To state a cognizable retaliation claim, a prisoner must show that the prison official was "subjectively motivated to discipline" the prisoner for exercising his constitutional rights, *id.* (internal quotation marks omitted), and the prisoner must "come forward with more than 'general attacks'" on a prison official's motivations, *Robinson v. Boyd*, No. 503CV25, 2005 WL 1278136, at *3 (N.D. Fla. May 26, 2005) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). "[B]road, conclusory allegations of retaliation are insufficient to state a claim under section 1983." *Robinson*, 2005 WL 1278136, at *3. The complaint must allege an actual causal connection between the prisoner's protected conduct and the defendant's action. *See Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).

Construing Plaintiff's Complaint and Amended Complaint broadly, Plaintiff suggests that any retaliatory actions against him were taken for one of three reasons: (1) because VSP Warden Allen was required to testify at the Charles Jackson hearing in Lowndes County; (2) because Plaintiff has participated in prior civil rights litigation; and/or (3) because Plaintiff refused his housing assignment. (*See* ECF No. 1-1 at 3.)

6

Plaintiff's Complaint and Amended Complaint, however, are largely unclear regarding which Defendants were responsible for making any allegedly retaliatory decisions. Plaintiff does clearly allege that Ms. Lillia Warren denied his initial request for protective custody (ECF No. 1 at 3) and that Wardens Taylor, Jordan, and Humphries and Unit Manager Smith also denied requests for protective custody (*Id.* at 5).[2]  Plaintiff also clearly alleges in his Amended Complaint that Defendants Taylor and Smith took his medical soft gym shoes in retaliation for filing civil litigation.  (ECF No. 7 at 3.)  No named Defendant is specifically linked with any other allegedly retaliatory actions, which include denial of outgoing indigent mail, yard call, and shower privileges, "medical denial," prison transfers, and denial of law library access.

### i. Warden Allen's Participation in Charles Jackson Hearing and Plaintiff's Prior Civil Litigation

To the extent Plaintiff alleges Lillia Warren, Warden Taylor, Warden Jordan, Unit Manager Smith, Warden Humphries, or any other unspecified BSP prison official retaliated against him in any way because Warden Allen had to testify at the Charles Jackson hearing or because of Plaintiff's participation in prior civil rights litigation, Plaintiff's Complaint fails to state a claim for retaliation because it fails to adequately allege a connection between Plaintiff's protected conduct and any Defendant's action. To show that a causal connection between retaliatory acts and protected conduct exists, a prisoner must show that the defendants were subjectively motivated to take adverse action because the prisoner engaged in protected conduct.  *See Thomas v. Lawrence*, 421

---

[2] Only Wardens Taylor and Jordan and Unit Manager Smith are listed as Defendants in the caption to Plaintiff's Complaint.

F. App'x 926, 928 (11th Cir. 2011) (per curiam).  Plaintiff has not alleged that any official at BSP had knowledge of the Charles Jackson proceeding or Warden Allen's role therein at the time any allegedly retaliatory decision was made.

Plaintiff has also failed to specifically identify any prior civil rights litigation in which he was involved that any BSP official knew about and may have used as a basis on which to retaliate against Plaintiff.  Plaintiff does mention that on May 7, 2015, Defendants Taylor and Smith "shook him down" and confiscated (and perhaps read) Plaintiff's legal materials and Plaintiff's soft gym shoes, which he had special medical permission to wear.[3]  (ECF No. 7 at 3, ECF No. 7-4.)  But Plaintiff does not describe these "legal folders and other legal material" or state how the materials were related to civil litigation, concerned the conditions of his confinement, or why those materials would have caused Defendants to retaliate against him.  *See, e.g., Smith v. Governor for Alabama*, 562 F. App'x 806, 815 (11th Cir. 2014) (per curiam) ("An inmate raises a First Amendment claim of retaliation if he shows that prison official disciplined him for filing a grievance or lawsuit concerning the conditions of his imprisonment.").  Absent this type of factual detail, Plaintiff cannot show that the officials were subjectively motivated to take adverse action against him because he engaged in protected conduct.  *See, e.g., Farrow*, 320 F.3d at 1248-49 (finding that prisoner failed to establish a causal relationship between his complaints and alleged denial of medical treatment for purposes

---

[3]Plaintiff alleges that he had been wearing his soft shoes in segregation for more than five months before the "shake down" in support of his contention that Defendants' confiscation of those shoes was retaliatory.  (ECF No. 7 at 3.)

8

of retaliation claim where nurse stated she never received or had knowledge of prisoner's complaints); *Thomas v. Warner*, 237 F. App'x 435, 438 (11th Cir. 2007) (per curiam) (district court did not err in dismissing prisoner's retaliation claims where prisoner failed to demonstrate that sheriff's act was a result of plaintiff's grievances).

### ii. Plaintiff's Refusal of Housing Assignment

To the extent Plaintiff contends that Lillia Warren, Warden Taylor, Warden Jordan, Unit Manager Smith, Warden Humphries, or any other BSP official retaliated against him in any way because Plaintiff refused his housing assignment, Plaintiff has also failed to state a claim because the Complaint does not allege facts sufficient to show that he engaged in protected activity. A prisoner does not have a constitutional right to be housed in a particular area of the prison. *Hester v. Thomas*, No. 2:12CV207-TMH, 2014 WL 3870368 at *8 (M.D. Ala. Aug. 7, 2014). Furthermore, Plaintiff admits in his Amended Complaint that he "volunteered" to be placed in segregation. (ECF No. 7 at 2.) Plaintiff could not have engaged in protected activity by volunteering for segregation or by refusing a housing assignment to which he was not constitutionally entitled. *See, e.g., Robinson*, 2005 WL 1278136 at *3 ("A prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected.").

In addition, to the extent Plaintiff seeks to bring claims for any retaliatory actions other than the denial of protective custody or the confiscation of his personal property— to include denial of outgoing indigent mail, yard call and shower privileges, "medical denial," prison transfers, and denial of law library access—Plaintiff has failed to identify which prison officials were linked with each allegedly retaliatory decision. Plaintiff

9

cannot therefore state a claim for retaliation. *See Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (noting that a complaint for retaliation must allege not only that a constitutional violation occurred, but also allege facts associating a defendant with such violation).

Thus, Plaintiff's retaliation claims against all BSP prison officials are **DISMISSED without prejudice.**

### b. First and/or Fourteenth Amendment Claims for Interference with Legal Mail and Denial of Access to the Courts

In addition to alleging that Defendants deprived him of access to outgoing mail as retaliation, Plaintiff appears to contend that such denial deprives him of "access to the courts but maybe one time per month." (ECF No. 1 at 4, ECF No. 1-1 at 1.) He states that the "store commissary lady" picks up outgoing indigent mail every Thursday but refuses to pick up Plaintiff's outgoing indigent mail each week. (ECF No. 1-1 at 1.) Plaintiff has not alleged that the "store commissary lady" was a prison employee or was otherwise acting under color of state law; indeed, Plaintiff has not specifically alleged that any named Defendant or BSP prison official interfered with his mail. It would be appropriate to dismiss Plaintiff's claims for this reason alone. *See Douglas*, 535 F.3d at 1321-22. In addition, however, Plaintiff has failed to allege that he suffered any actual injury. *See, e.g., Hall v. Sec'y for Dep't of Corr.*, 304 F. App'x 848, 850 (11th Cir. 2008) (per curiam) ("A constitutional prerequisite to a claim of denial of access to the courts is that the complainant must have suffered an 'actual injury.'"). This Court has received

Plaintiff's correspondence in a timely manner, and he has not alleged or shown that his case has been hindered because of any delay in outgoing mail.

Plaintiff also mentions that he has been refused access to the law library. (*See, e.g.,* ECF No. 7 at 2.) These claims must also fail because Plaintiff has failed to allege how such refusal has denied him access to the courts. "The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment." *Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000). Instead, a prisoner "must show that this inability caused an actual harm, or in other words, unconstitutionally prevented him from exercising that fundamental right of access to the courts in order to attack his sentence or to challenge the conditions of his confinement." *Id.* Other than to contend that he might be denied access to an appellate court "if" he loses any case he has filed, (ECF No. 7 at 2), Plaintiff has made no effort to explain how any alleged denial of access to the law library has actually deprived him of the ability to file this lawsuit challenging the conditions of his confinement or affected the filing or prosecution of his habeas petition or any other civil action he may have pending.

Based on the foregoing, any claims against any BSP official based on delay with outgoing prison mail or denial of law library access are **DISMISSED without prejudice.**

### c. Eighth Amendment Claims

#### i. Deliberate Indifference to Medical Needs

Plaintiff also contends that he has suffered "medical denial" after being placed in segregation as punishment for refusing his housing assignment and that he was denied proper medical attention when he injured his back while transferring his property to the

11

segregation unit. (ECF No. 1-1 at 1.)  A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment.  *Farrow*, 320 F.3d at 1243.

Plaintiff's allegations, even when viewed in his favor, do not include sufficient facts to show that any prison official at BSP acted with "deliberate indifference" to a "serious medical need," as would be required to state an actionable Eighth Amendment claim.  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."  *Farrow*, 320 F.3d at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need."  *Id.*

First, Plaintiff has failed to adequately plead a "serious medical need," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at1243 (internal quotation marks omitted).  "In either of those situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (alteration in original)).  Plaintiff alleges he "injured his back causing pain and serious suffering every minute of the day," (ECF No. 1-1 at 1), but this single, conclusory statement, absent further factual development, does not demonstrate that Plaintiff's back

injury was ever diagnosed by a physician, obviously requires treatment, or poses a substantial risk of serious harm if left unattended.

Second, even if the Court were to assume that Plaintiff's back injury was sufficiently serious to implicate the Eighth Amendment, Plaintiff fails to allege sufficient facts to allow the Court to determine whether any BSP official acted with "deliberate indifference" to his serious medical need. "To establish 'deliberate indifference,' Plaintiff must show that a Defendant had '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original)). Because this test has a subjective component, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Id.* at 1331. Plaintiff does not specify which prison officials allegedly refused his requests for help, when such refusal occurred, what information Plaintiff conveyed to prison officials in his requests, or how Plaintiff's physical appearance or symptoms manifested signs of a serious medical need. As such, it would be impossible for a court to determine whether prison officials acted with deliberate indifference to Plaintiff's serious medical needs.

Accordingly, the Court finds that Plaintiff's claims for deliberate indifference to his serious medical needs are **DISMISSED without prejudice.**

### ii.  Deliberate Indifference to Safety

Plaintiff alleges that various BSP officials denied his requests for protective custody. Prison officials can be liable under the Eighth Amendment if they act with

13

deliberate indifference to an inmate's safety by failing to protect the inmate. In the context of a failure-to-protect case, "deliberate indifference" means that the prison official "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*; *see also Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (noting that a prison official must be aware of "specific facts" from which an inference of substantial risk of serious harm could be drawn).

Plaintiff has not sufficiently alleged specific facts showing that prison officials acted with deliberate indifference in this case. While Plaintiff alleges that he was "jumped on by Muslim gang members out of the request by inmate Charles Jackson," that he was attacked once by "Muslims" at VSP and attacked once and "almost raped" by "Muslims" at BSP, (ECF No. 1-2, ECF No. 7 at 2), he has not alleged that prison officials at either institution knew about these attacks or that Plaintiff was seeking protective custody because he felt threatened by Charles Jackson's friends or anyone else at the prison.[4] Because Plaintiff has failed to allege what knowledge any particular BSP prison official had regarding these attacks, Plaintiff cannot show that any BSP prison official was subjectively aware of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842-

---

[4] To the extent Plaintiff attempts to state an independent claim that any BSP prison official threatened to place someone "like a Muslim gang member" in Plaintiff's segregation cell to "make" him return to general population, such claim must fail. *See, e.g., Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 864 (11th Cir. 2008) (per curiam) (finding prisoner's "allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim").

843; *see also Carter*, 352 F.3d at 1349-50 (11th Cir. 2003) (per curiam) (holding that plaintiff failed to establish that prison officials had a subjective awareness of a substantial risk of serious physical threat to plaintiff in part because plaintiff did not allege that he had communicated a specific threat to the prison officials); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (per curiam) (plaintiff's statement to prison officials that "me and that dude had problems. I'm in fear for my life. Don't put me in the cell with him" insufficient to show that prison officials had subjective knowledge that plaintiff's cell mate posed a risk of serious harm to plaintiff).

The Court therefore **DISMISSES without prejudice** Plaintiff's claims regarding the alleged denial of protective custody.

### iii. Conditions of Confinement

To the extent Plaintiff's claims for denial of shower privileges, denial of the use of a "property kart" to transfer his belongings, and lack of table and chair in his cell can be construed as conditions-of- confinement claims under the Eight Amendment, Plaintiff has also failed to state an actionable claim.

To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner

complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Denial of adequate hygiene for an extended period of time can violate the Eighth Amendment. *See, e.g., Bradley v. Puckett*, 157 F.3d 1022, 1025-26 (5th Cir. 1998) (disabled prisoner who was denied adequate shower facilities for two months and who developed fungal infection and blisters as a result stated claim for cruel and unusual punishment). In this case, however, Plaintiff does not allege that he suffered any harm as a result of being denied shower access or that he was unable to maintain an adequate level of hygiene without shower privileges. *Clayton v. Morris,* No. 90 C 2718, 1994 WL 118186, *6-7 (N.D. Ill. Mar. 28, 1994) (finding that "[t]he denial of shower privileges over a prolonged period of time may be actionable if the inmate can allege a specific physical harm that results" and noting that the prisoner had failed to allege any harm and admitted he could maintain hygiene by using the sink and supplies in his cell), *aff'd,* 70 F.3d 1274 (7th Cir.1995); *cf. also Robertson v. McCray*, No. 03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (noting that courts have held that "a plaintiff's showing of harm or injury was a necessary element" where longer deprivations related to hygiene items were alleged).

Even assuming the alleged denial of shower privileges is objectively "serious" or "extreme" and thus implicates the Eighth Amendment, Plaintiff has failed to "show that the defendant prison officials subjectively acted with 'deliberate indifference' with regard to the condition at issue." *Ivory v. Warden, Governor of Alabama*, No. 14-11317, 2015 WL 327887 at *4 (11th Cir. Jan. 27, 2015) (per curiam). Plaintiff again fails to specify

16

which prison officials allegedly denied his shower privileges, when such denials occurred, and what information about such denials was conveyed to which Defendants. It is therefore impossible to determine whether any named Defendant "subjectively knew of and disregarded a substantial risk so as to make out an Eighth Amendment claim." *Id.* at *5 (holding that even prisoner's contention that "conditions were so obvious that the defendants had to have known about them is insufficient without some proof of actual knowledge or circumstantial evidence by which such an inference of knowledge could be drawn").

Plaintiff's allegations that he needs a table and chair in his cell and that he was not permitted to use a "property kart" to aid in transferring his belongings to the segregation unit likewise fail to state a constitutional claim. "[T]he Constitution does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The use of a "property kart" to make transferring property from one area of the prison to another easier and the provision of tables and are simply not amenities a prison is constitutionally required to provide. *See Chandler*, 379 F.3d at 1298 (noting that "*extreme* deprivations are required to make out a conditions-of-confinement claim" (internal quotation marks omitted)).

Accordingly, the Court **DISMISSES without prejudice** Plaintiff's conditions-of-confinement claims.

### d. Security Level

To the extent Plaintiff seeks to bring an independent claim that Ms. Warren improperly elevated his security level to "medium" upon his arrival at BSP, such claim

17

also fails. Plaintiff provides no additional factual detail about this claim, and a prisoner "has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (per curiam) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that Congress has given prison officials full discretion to control conditions of confinement, including prisoner classification)). The Court therefore **DISMISSES** this claim **with prejudice.**

### e. Denial of Grievance Procedures

To the extent Plaintiff seeks to bring an independent claim that Defendants denied him access to grievance forms, this claim is not cognizable under 42 U.S.C. §1983. Prisoners have no constitutionally-protected liberty interest in accessing a prison's grievance procedure. *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam); *Thomas v. Warner*, 237 F. App'x 435, 438 (11th Cir. 2007) (per curiam) ("Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim."). Accordingly, the Court **DISMISSES** this claim **with prejudice.**

### f. Frozen Inmate Account

Plaintiff also briefly mentions that "Defendants have frozen [his] inmate account and because Muslims keep sending me stolen money from credit cards that are stole to get my account frozen." (ECF No. 1-2 at 1.) This allegation, too, fails to state a claim upon which relief may be granted. Plaintiff admits that the reason Defendants have frozen his account is because he is receiving "stolen money," i.e., illegal funds. "An

inmate has no property right protected by the Fourteenth Amendment to receive an unauthorized and/or contraband money order while in prison." *Moon v. Rayapati*, No. 2:06-CV-384-WKQ, 2008 WL 4493298, at *14 (M.D. Ala. Sept. 29, 2008). The Court therefore **DISMISSES** Plaintiff's claims regarding his inmate account **with prejudice**.

### III.   CONCLUSION

As discussed above, nearly all of Plaintiff's claims suffer from a similar defect: they are conclusory and unsupported by the appropriate level of factual detail. Plaintiff should be well aware of his obligation to provide sufficient details to support each of his claims. *See Bingham*, 654 F.3d at 1178 (affirming dismissal of this Plaintiff's claims regarding theft of property where Plaintiff failed to "provide any details to support this claim, such as the names of the guards or inmates involved in these instances of theft"). As in at least one previous case filed by this Plaintiff, his conclusory allegations in this case are insufficient to survive frivolity screening. *Id.* In short, a minimum level of factual support is needed before Plaintiff's allegations can state a claim against any BSP official. *See Iqbal*, 556 U.S. at 678 (noting that a well-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The Court therefore **DISMISSES** Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted**.** The Court also **DENIES** Plaintiff's Motion to Compel, (ECF No. 2), but **DIRECTS** the Clerk to mail a copy of Plaintiff's Complaint to Plaintiff as requested by Plaintiff in that motion. The Court **DENIES** as moot Plaintiff's "Motion to Order Defendants to Reply and Motion Seeking *In Forma Pauperis*," (ECF No. 8), which merely reiterates claims already addressed in detail in this Order.

**SO ORDERED**, this 1st day of June, 2015.

                                                S/ Marc T. Treadwell
                                                MARC T. TREADWELL
                                                UNITED STATES DISTRICT COURT